```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


LISA FORD on behalf of E.F.,      )
                                  )
            Plaintiff,            )
                                  )
       vs.                        )     No. 4:05-CV-1051 (CEJ)
                                  )
JO ANNE B. BARNHART,              )
Commissioner of                   )
Social Security,                  )
                                  )
            Defendant.            )
```

**MEMORANDUM AND ORDER**

This matter is before the Court for review of an adverse ruling by the Social Security Administration.

## I.  Procedural History

On July 12, 2002, Lisa Ford filed an application on behalf of her son, plaintiff E.F., for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* (Tr. 64-66). The application alleged that disability began on September 1, 1997. (Tr. 64). After the application was denied on initial consideration (Tr. 47-50), plaintiff requested a hearing from an Administrative Law Judge (ALJ). (Tr. 35-36).

The hearing was held on January 8, 2004. (Tr. 192-200). Plaintiff was represented by counsel. The ALJ issued a decision on February 10, 2004, denying plaintiff's claim. (Tr. 34-40). The Appeals Council granted plaintiff's request for review on July 20, 2004, and the claim was remanded to the ALJ for further review. (Tr. 43-46). A supplemental hearing was held on January 3, 2005. (Tr. 201-05) and, on January 28, 2005, the ALJ issued a decision

again denying plaintiff's claim. (Tr. 14-22). On May 16, 2005, the Appeals Council of the Social Security Administration denied plaintiff's request for review. (Tr. 5-8). Accordingly, the ALJ's decision stands as the Commissioner's final decision. See 42 U.S.C. § 405(g).

## II.  Evidence Before the ALJ

### A.  Testimony at the Hearings

Plaintiff's mother Lisa Ford testified at the hearing on January 8, 2004. Plaintiff was 12 years old, and resided at home with his mother, older sister, and younger brother. At the time of the hearing, plaintiff was in the 6th grade, and had repeated either the 2nd or 3rd grade.[1] Pursuant to his Individualized Education Plan (IEP), plaintiff received resource services and modified work assignments. His primary difficulty, Ms. Ford testified, was maintaining focus on his assignments. (Tr. 195-96). He did not have speech, language or physical limitations and did not receive medical care from a specialist. (Tr. 197). He needed frequent reminders to engage in daily self care, such as brushing his teeth or washing his face. (Tr. 197). Ms. Ford testified that plaintiff did not play sports or belong to youth groups, interacting only with family members. Ms. Ford testified that other children tended to make fun of him. (Tr. 198). On his last report card, plaintiff earned Fs and one D. (Tr. 199).

---

[1] School records show that plaintiff repeated second grade. (Tr. 115).

-2-

Ms. Ford testified again at the second hearing on January 3, 2005. Plaintiff, then 13 years old, continued to receive special education services in science, mathematics, communication arts, social studies, and reading. (Tr. 204). He was assigned to a resource class, which he attended for special help after going to his other classes. Ms. Ford testified that her son's teachers told her that he did not pay attention and did not complete his homework. He was having difficulty "keeping up" even after he was assigned modified work. Because Ms. Ford worked nights, she did not know what prevented her son from completing his homework. However, she noted that some of his teachers did not adhere to the plan to give him modified assignments. (Tr. 205). Ms. Ford testified that plaintiff read at grade level 2.3. (Tr. 206). Plaintiff's communication arts teacher had recently arranged for plaintiff to stay for an hour after school for additional help three days per week. (Tr. 208). With regard to self-care, Ms. Ford testified that plaintiff was able to eat, bathe and dress without assistance, but that he needed to be reminded to take a bath "from time to time." (Tr. 207).

**B.     School records and other records before the ALJ**

The documentary record before the ALJ included documents completed by plaintiff's mother in the application process, school records, and medical records.

Ms. Ford requested an evaluation of her son in 2000, when plaintiff was in the 3rd grade at Lewis and Clark Elementary School in the Riverview Gardens School District. School personnel

concurred and, on November 2, 2000, the Special School District Screening Review Committee approved the request. The referral packet indicated significant concerns in the areas of reading, math and written expression, and showed that plaintiff was functioning in the lowest third of his class. No concerns were noted in the areas of vision, hearing, health, motor, cognition, adaptive behavior, speech, oral language and social-emotional behaviors. Plaintiff's birth, development and medical history were unremarkable. His mother was concerned about plaintiff's concentration, self-control, homework completion, and academic frustration. (Tr. 115).

Plaintiff was cooperative and pleasant throughout the assessment process. He was able to initiate conversation and seemed comfortable in the situation. He needed extra time for processing written and oral information and it was necessary to repeat and rephrase verbally presented instructions and concepts. His approach to visual problem solving was much more accurate, deliberate and organized. (Tr. 118).

On December 1, 2000, the Woodcock-Johnson Tests of Achievement-Revised were administered to plaintiff. In the "Broad Reading" Cluster, plaintiff's scores were in the 14th percentile or lower; in the "Broad Written Expression" Cluster, his scores were in the 16th percentile or lower; his scores in the "Broad Mathematics" Cluster ranged between the 22nd and 60th percentiles. (Tr. 117). The Weschler Intelligence Scale for Children (WISC-III) was completed on December 18, 2000, with plaintiff receiving the

following scores: Verbal IQ – 91; Performance IQ – 108; Full Scale IQ – 99. (Tr. 116). Plaintiff's Performance IQ was felt to be a better indicator of his true potential than his Full Scale IQ . (Tr. 118).

The Learning Disability Education Scale completed by plaintiff's teacher indicated difficulties relating to basic reading, reading comprehension, and written expression. (Tr. 119). Plaintiff's low academic achievement scores documented his failure to achieve at the expected level based upon cognitive ability. (Tr. 118).

Classroom observation, review of daily work, formal and informal assessment results and teacher interviews revealed that plaintiff performed consistently below expectation. Based upon the evaluations, the diagnostic team identified plaintiff as having a learning disability in the areas of basic reading, reading comprehension, and written expression, and certified that he required special education and related services. (Tr. 118, 119). Environmental, cultural, and economic factors were not considered to be significantly related to his learning disability. (Tr. 119).

The assessment identified several strategies to assist plaintiff including: additional time to process written and oral information, repetition and rephrasing of verbally presented instructions, frequent review of previously learned information, an outline of important points in reading material to help plaintiff focus and retain information, and semantic webbing to organize written tasks. In addition, it was noted, "phonic skills should be

retaught and drilled, while improving his sight vocabulary." (Tr. 119).

The record contains an IEP dated February 1, 2002. (Tr. 124-38). Plaintiff was then a 4th grade student in the Normandy/Pine Lawn school district at the time. The Woodcock Reading Mastery Tests – Revised G were administered on January 30, 2002. Several scores were well below grade-level, ranging between grades 1.9 and 2.6. (Tr. 125). Plaintiff showed marked strength in the visual-auditory learning and analogies subtests. He was also able to read 99% of the 220 Dolch word test. (Tr. 126). The IEP called for a modified reading curriculum with alternative grading, and 450 minutes per week of special education services in a small group setting. (Tr. 137).

The record includes a report card for the second, third and fourth quarters of the academic year 2001-02 (4th grade) at Pine Lawn Elementary School.[2] Plaintiff earned Cs in Social Studies and Science and Ds in his remaining subjects. It was reported that plaintiff performed below grade level in reading and language, and at grade level in all other subjects. In the second and third quarter reports, the notations for the subjects for which plaintiff received a grade of D or F were that plaintiff had low test scores, failed to complete daily assignments, failed to complete his work fully and/or on time, and that increased effort would improve his performance. The vocal music teacher commented that plaintiff had

---

[2] The plaintiff was not enrolled at the school during the first quarter.

a "cooperative positive attitude," and the art teacher stated that he was improving in that class. Plaintiff was required to attend summer school. (Tr. 108).

Arthur Littleton, Ph.D., completed a consultative psychological evaluation on August 20, 2002. (Tr. 180-82). Dr. Littleton observed that plaintiff presented with appropriate eye contact, with good focus and attention. He displayed no accelerated motor activity, restlessness, or evidence of hyperactivity. His thoughts were logical and coherent, with age-appropriate content. He denied problems with poor impulse control. He reported that he had several friends, that he enjoyed playing baseball, attended church regularly, and got along well with his siblings and parents. (Tr. 181). Dr. Littleton concluded that plaintiff was "frustrated by his difficulty with written expression and a reading disorder. His ability to decode and process information seems consistent with a combined learning disorder. Otherwise, his level of adaptive behavior seems largely age appropriate." (Tr. 182). Dr. Littleton diagnosed plaintiff with Learning Disorder Not Otherwise Specified (Moderately Severe). Id.

On September 4, 2002, Ricardo C. Moreno, Psy.D., completed a Childhood Disability Evaluation Form. (Tr. 183-88). He noted that plaintiff's learning disability was severe but did not meet or equal a listing. (Tr. 183). Dr. Moreno assessed plaintiff as having no limitation in the domains of attending and completing tasks or self-care, and less than marked limitation in the domains of acquiring and using information and interacting and relating

with others. (Tr. 185, 187). Dr. Moreno did not provide ratings for the domains of moving about and manipulating objects, and health and physical well-being. (Tr. 187). It is undisputed, however, that plaintiff has no limitations in these domains.

Plaintiff's IEP was reviewed on January 27, 2003. (Tr. 141-52). It was noted that since the last IEP, plaintiff had shown several improvements. Areas of difficulty included reading comprehension; listening comprehension; deficits in written expression; difficulties when writing with capitalization, punctuation, grammar, and sequencing ideas; and "significant attentional difficulties in the classroom." Plaintiff's parents expressed concerns regarding his low grades and worried that he would fall behind. (Tr. 142). Plaintiff received, on a weekly basis, special instruction for 300 minutes in basic reading and reading comprehension, and 150 minutes in written expression, delivered in a small group setting. (Tr. 148).

The IEP was next reviewed on September 15, 2004. (Tr. 162-79). A decision was made to increase the amount of special education services to 670 minutes per week. (Tr. 162). Plaintiff's learning disabilities affected his ability to read and comprehend at grade level and to understand subject matter presented orally. Deficits were noted in writing assignments and classroom work, completing homework, grammar usage, and sequencing ideas when speaking or in writing. In addition, "significant attention concerns" were noted. (Tr. 165). Plaintiff showed

improvements since the last IEP in sequencing ideas, punctuation and writing. Id.

The record includes plaintiff's 6th grade report card for the academic year 2003-04. (Tr. 155-56). The first quarter teacher comment states: "[Plaintiff] puts forth little effort. He does not complete class assignments on time. Looking forward to improvement." An additional note reads: "Get to work. You can do better if you try." (Tr. 155). His work effort was noted to be inconsistent during the second quarter. Id. By the third quarter, however, the teacher wrote: "[Plaintiff] has begun to take responsibility for his academic success. I expect to see continued improvement 4th quarter." Id. And, in the fourth quarter, the teacher noted: "[Plaintiff] has acquired study habits. I am proud of him." An additional note states: "Get to the public library and keep on reading this summer!" Id. Plaintiff's grades improved during the course of 6th grade. See id.

On July 12, 2002, Ms. Ford completed a Disability Report as part of the application for SSI benefits. (Tr. 81-92). She described her son's disabling condition as "Learning disabled, attention deficit disorder (ADD) [,] can't stay focused." In describing the impact of his conditions on him, she stated, "He gets real frustrated and doesn't want to do what I tell him." (Tr. 83). She indicated that plaintiff had not been treated by a doctor for his conditions. (Tr. 84). In response to questions on the Claimant Questionnaire (Tr. 94-97) and Daily Activities Report (Child) (Tr. 98-101), Ms. Ford noted that plaintiff was learning-

disabled, could not stay focused, and could not remember instructions. She also stated that he "doesn't listen to anyone" and that she had "to watch his every move." (Tr. 100).

### III. Decisions of the ALJ and the Appeals Council

In the decision issued on February 10, 2004, the ALJ made the following findings:

1. Plaintiff was born [in 1991].

2. Plaintiff has not engaged in substantial gainful employment since birth.

3. Plaintiff has the following medically-established impairment(s): a learning disability.

4. The allegations by plaintiff and his mother that he has medical impairments resulting in marked and severe functional limitations are not credible.

5. Plaintiff has no medical impairment that meets the criteria of any impairment listed in Part B or Part A of Appendix 1, Subpart P, Regulations No. 4, 20 C.F.R. §§ 416.924(d) and 416.925.

6. Plaintiff's medically-established impairments, either singly or in combination, are not medically or functionally equivalent to any impairment listed in Part B or Part A of Appendix 1. 20 C.F.R. §§ 416.924(d), 416.926, and 416.926a.

7. Plaintiff does not have a medically determinable physical or mental impairment, or combination of impairments, which results in marked and severe functional limitations. Specifically, he has less than marked limitations in his abilities (a) to acquire and use information, and (b) to interact and relate with others; he has no limitations in the domains of (c) attending and completing tasks, (d) moving about and manipulating objects, (e) caring for himself, or (f) in his health and physical well-being.

8. Plaintiff was under a "disability" as defined in the Social Security Act at any time through the date of the decision.

(Tr. 39-40).

On July 20, 2004, the Appeals Council remanded the case and directed the ALJ (1) to provide explanations for the ratings given in the six functional domains and (2) to consider the comment in the IEP dated September 15, 2004 that "significant attention concerns" affected plaintiff's "involvement and progress in the general education curriculum." (Tr. 45-46, Tr. 165).

The ALJ issued a second decision on January 28, 2005. After analyzing the six domains of functioning in depth, and addressing the evidence with regard to attention concerns, the ALJ again found that plaintiff had a medically determined severe impairment, i.e., a learning disorder. The ALJ also found that plaintiff had less than marked limitations in his ability to acquire and use information and no limitation in the other five domains. The ALJ thus concluded that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 22).

**IV. Discussion**

To be eligible for SSI benefits, a claimant must prove that he is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). A child under the age of eighteen will be declared disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C).

To determine whether a child claimant is disabled, the Commissioner employs a three-step evaluation process. The

-11-

Commissioner first determines whether the child is engaged in substantial gainful activity. If the child is so engaged, he is not disabled. Second, the Commissioner determines whether the child has a "severe impairment." If the child's impairment is not severe, he is not disabled. Finally, the Commissioner determines whether the child's impairment meets, medically equals, or functionally equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the child's impairment is, medically equals, or functionally equals a listed impairment, he is disabled under the Act. 20 C.F.R. § 416.924 (2002).

In determining functional equivalence, the Commissioner considers the child claimant's functioning in broad areas of functioning, or "domains." The six domains are:

(i) Acquiring and using information;

(ii) Attending and completing tasks;

(iii) Interacting and relating with others;

(iv) Moving about and manipulating objects;

(v) Caring for oneself; and,

(vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1) (2002). For an impairment to functionally equal a listed disability, it must result in either (1) marked limitations in two domains or (2) an extreme limitation in one domain. 20 C.F.R. § 416.926a. The Commissioner will find a "marked" impairment in any domain when the impairment(s) interferes seriously with the claimant's ability to independently initiate, sustain, or complete activities. A "marked" impairment

is the equivalent of functioning found on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is found in a domain when a claimant's impairment interferes very seriously with the ability to independently initiate, sustain, or complete activities. It is the equivalent of functioning found on standardized testing with scores that are at least three standard deviations below the mean. 20 C.F.R. § 416.926a(e)(3)(i).

### A. **Standard of Review**

The Court must affirm the Commissioner's decision, "if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled." Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002) (quoting Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001)). The Court may not reverse merely because the evidence could support a contrary outcome. Estes, 275 F.3d at 724.

In determining whether the Commissioner's decision is supported by substantial evidence, the Court reviews the entire administrative record. See Stewart v. Sec. of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992).

The Court must consider any evidence that detracts from the Commissioner's decision. Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999). Where the Commissioner's findings represent one of two inconsistent conclusions that may reasonably be drawn from the evidence, however, those findings are supported by substantial evidence. Pearsall, 274 F.3d at 1217 (citing Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)).

**B.  Plaintiff's Allegation of Error**

Plaintiff's administrative appeal raises the following general issue: Did the ALJ properly consider the educational records in formulating plaintiff's ability to initiate and sustain age appropriate conduct under 20 C.F.R. §§ 416.924a and 416.926a? More specifically, plaintiff contends that the record establishes that he has a marked level of impairment in two domains: (1) attending to and completing tasks and (2) acquiring and using information.

In assessing the domain of attending to and completing tasks, the Commissioner considers how well the claimant is able to focus and maintain attention, and how well the claimant begins, carries through, and finishes activities, including the pace at which activities are performed, and the ease with which the claimant changes activities. 20 C.F.R. § 416.926a(h). Examples of limited functioning in this domain include (i) being easily startled, distracted, or overreactive to stimuli; (ii) being slow to focus on, or failing to complete, activities in which the child has an interest; (iii) being repeatedly sidetracked; (iv) being easily frustrated; and (v) requiring extra supervision to remain engaged.

-14-

§ 416.926a(h)(3). These examples do not, without specific evidence from the record, indicate that a limitation in this domain is "marked" or "extreme." Id. A school-age child (aged 6 to 12) is expected to be able to sustain attention well enough to participate in group sports, read by him- or herself, and complete chores. The school age child should also be able to complete a "transition task" (e.g., change for gym, change classrooms) without extra reminders and accommodation. 20 C.F.R. § 416.926a(h)(2)(iv). The adolescent is expected to be able to attend to increasingly longer presentations and discussions, maintain attention while reading, and independently plan and complete long-range assignments. The adolescent should not be unduly distracted by peers or be unduly distracting to peers. 20 C.F.R. § 416.926a(h)(v).

Concerns regarding plaintiff's attention were noted at several junctures: During the initial evaluation in December 2000, plaintiff was observed as having difficulty attending to the task and sitting still. (Tr. 119). Nonetheless, he had good task focus, and no specific diagnosis related to attentional concerns was made. The IEPs completed in 2002, 2003, and 2004 similarly indicated concerns with attention. They also indicate, however, that plaintiff did not exhibit behaviors that impeded his learning or that of others; indeed, there is no record of any disciplinary or social problems. (Tr. 19). The report cards for the 4th and 6th grades made no mention of attention problems, and plaintiff's mother testified in 2005 that plaintiff needed only occasional reminders with regard to his self care. Id. No physician ever

made a formal diagnosis of attention deficit disorder, and plaintiff did not receive medication or therapy for treatment of such a disorder. Id.

After reviewing the applicable regulations, 20 C.F.R. §§ 416.926a(h) (attending and completing tasks), (h)(2)(iv) and (v) (age group descriptors), and (h)(3) (examples of limited functioning), the Court concludes that substantial evidence supports a finding that plaintiff did not have a "marked" limitation in the domain of attending and completing tasks.

In assessing the domain of acquiring and using information, the Commissioner considers how well the claimant acquires or learns information and how well the claimant uses information once learned. 20 C.F.R. § 416.926a(g). Examples of limited functioning in this domain include (i) failing to demonstrate understanding of words about space, size or time (e.g., in/under, big/little, morning/night); (ii) being unable to rhyme; (iii) having difficulty recalling what was learned in school; (iv) having difficulty solving mathematics questions or computing arithmetic answers; (v) talking only in short, simple sentences. § 416.926a(g)(3). These examples do not, without specific evidence from the record, indicate that a limitation in this domain is "marked" or "extreme." Id. A school-age child (aged 6 to 12) is expected to be able to learn to read, write, and do math, and discuss history and science, as demonstrated by producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work and entering into discussions. 20 C.F.R. § 416.926a(g)(2)(iv).

-16-

The adolescent is expected to be able to comprehend and express simple and complex ideas, using increasingly complex language. The adolescent should also be able to apply skills in practical ways, such as carrying out instructions or preparing a job application. 20 C.F.R. § 416.926a(g)(v).

As the ALJ noted, the 2000 evaluation indicated that plaintiff had both learning deficits and considerable strengths: he showed strength in visual perceptual organization and processing speed, visual problem solving, spatial relations, alertness to detail, visual-motor integration, and short-term visual memory. Within the verbal scale, he showed strengths in math reasoning, verbal concept formation, long-term recall of general facts, and short-term auditory memory. In the classroom, although plaintiff's grades reflected lower performance than expected, his performance improved with his effort and with the acquisition of study habits. The Court concludes that substantial evidence supports a finding of no marked or extreme limitation in the domain of acquiring and using information.

Plaintiff makes several unsupported assertions that he contends warrant finding marked levels of impairment in both contested domains: First, he notes that his education plan requires that assignments and tests be read to him. The fact that a claimant receives special education services does not establish a disability *per se*. See 20 C.F.R. § 416.924a(b)(7)(iv) ("The fact that you do or do not receive special education services does not, in itself, establish your actual limitations or abilities.")

Plaintiff makes a similarly categorical argument based upon Dr. Littleton's diagnosis of moderately severe learning disorder and plaintiff's low levels of achievement. The regulations make clear that a finding of disability must be based upon a review of all relevant evidence, which the ALJ conducted in this case.

### V. Conclusion

For the reasons discussed above, the Court finds that the Commissioner's decision is supported by substantial evidence in the record as a whole. Therefore, plaintiff is not entitled to relief.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by plaintiff in his brief in support of complaint [#16] is **denied**.

A separate judgment in accordance with this order will be entered this same date.

```
                              _____
                              CAROL E. JACKSON
                              UNITED STATES DISTRICT JUDGE
```

Dated this 28th day of August, 2006.